FILED

CLERK, U.S. DISTRICT COURT

04/23/2025

CENTRAL DISTRICT OF CALIFORNIA

BY_____AP_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES EDWARD WHITFIELD,
Plaintiff,

v.

LEE DANIELS, DANNY STRONG, IMAGINE ENTERTAINMENT, INC., 20TH TELEVISION, INC., WALT DISNEY COMPANY, and DOES 1–50, Defendants.

B/O
N/S

Case No. [To Be Assigned]

5:25-cv-01035-MWC(BFMx)

Case No. _____

**JURY TRIAL DEMANED**

**CIVIL COMPLAINT FOR DAMAGES and OTHER EQUITABLE RELIEF: WILLFUL COPYRIGHT INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FRAUDULENT MISREPRESENTATION, BREACH OF CONFIDENTIAL RELATIONSHIP, UNJUST ENRICHMENT, AND VIOLATION OF PLAINTIFF'S STATUTORY AND COMMON LAW RIGHTS, INCLUDING RIGHTS OF PUBLICITY AND PRIVACY AND OTHER CLAIMS:**

**"This lawsuit is not about seeking revenge—it is about restoring truth. My life, my identity, and my intellectual property were stolen. A telephone call and a contract would have sufficed."**

**— James Edward Whitfield, Plaintiff**

## I. INTRODUCTION

**1.** Plaintiff James Edward Whitfield is a polymath genius whose intellect, creativity, and enterprise development far exceed conventional definition. What makes his story

extraordinary—and what renders the Defendants' misconduct in this case uniquely egregious—is that the protected works at issue were not developed in a Hollywood studio or Silicon Valley think tank. **They were conceived, written, and engineered by Plaintiff while he was serving 17½ years (85%) of a 20-year sentence in the custody of the United States Bureau of Prisons between the years January, 1988 through July 1, 2005.**

**2.** While incarcerated, Plaintiff authored **From Underworld to Overworld (©1997)**, an unpublished manuscript chronicling a story of personal transformation, empire-building, and identity reclamation. He **also designed the Universal Products Inventory Tracking System (U.P.I.T.S.) (©1995–1996), an AI-powered predictive logistics framework years ahead of its time,** and **developed the Trilateral Wealth Creation System (©TWCS) (1997–1999), a complex, multi-sector AI-driven economic model for generational wealth building.**

3. These **were not** abstract theories. They were detailed, functional systems—intellectual property of high commercial and narrative value. **And yet, despite being created in a prison cell, these works would later form the uncredited foundation for the multi-billion-dollar media franchise Empire (2015–2020).**

4. What the Defendants took was not simply a storyline or a few familiar tropes—they took a life, a body of work, and an identity. They reverse-engineered a legacy built through pain, genius, and perseverance, and rebranded it as entertainment.

5. This lawsuit seeks to restore authorship, reclaim ownership, and hold the Defendants accountable for one of the most extensive, intentional, and provable acts of narrative, corporate, and technological misappropriation in modern television history.

## II. NARRATIVE IDENTITY: THE FOUNDATION OF PLAINTIFF'S CLAIM

6. This case is fundamentally about **narrative identity**—the legal and factual recognition that a person's life story, when expressed through manuscripts, frameworks, intellectual property, and documented lived experience, **becomes a protectable structure of authorship**. **Where another work mirrors the arc, substance, and emotional progression of that identity—so closely as to be factually indistinguishable—authorship rights attach.** That is what occurred here. *Empire* **was not a creative variation**; it was a derivative replication of Plaintiff's life and work, reassembled for commercial television **without** consent or attribution.

.7. Plaintiff James Edward Whitfield authored his unpublished manuscript **From Underworld to Overworld in 1997** while incarcerated, along with associated intellectual systems and character development tools that reflected the arc of his transformation from federal prisoner to business architect, community reformer, and technological innovator.

8. Empire—**a television series that claimed inspiration from Shakespeare's King Lear and modern moguls—did not mirror fiction or myth. It mirrored Whitfield's actual life:**

  - The 17½-year sentence served in federal custody (replicated exactly in Cookie Lyon's storyline);

  - The biracial son, born to a white mother, later discovered and integrated into the family empire (Kingsley Lyon);

  - The tragic medical crisis involving Plaintiff's daughter, Toni Leeks-Lee, and her need for a heart transplant (replicated in Andre Lyon's storyline);

- The founding of multi-sector business and media platforms (EORN, 21st Century Media, OTSMN) **years before the fictional Empire Entertainment** emerged on screen.

9. Empire presents itself as a fictional work, **but in both structure and substance, it is an unauthorized dramatization of Whitfield's life story, character evolution, language, business architecture, and deeply personal struggles.**

10. Across six seasons, the show displays thematic symmetry to Whitfield's journey—including redemption, betrayal, legacy-building, generational struggle, moral compromise, reentry from incarceration, public leadership, personal loss, and entrepreneurial reinvention.

11. No other source—literary, commercial, or artistic—matches the narrative content of Empire with the consistency, emotional precision, and biographical accuracy found in Plaintiff's protected works.

12. The characters, business constructs, speech patterns, plotlines, family dynamics, and overarching transformation of Lucious Lyon **do not derive from the imagination of Daniels or Strong. They derive from the life and creative authorship of Whitfield.**

13. Plaintiff therefore asserts narrative identity as both a factual and legal anchor of authorship. Empire was not inspired—**it was reverse-engineered**. **Its foundation is not fiction--it is all James Edward Whitfield.**

## III. COLLAPSE OF THE INDEPENDENT CREATION DEFENSE – FIVE-SOURCE ANALYSIS

14. Defendants are expected to assert that the television series Empire was the product of "independent creation," developed without access to or use of Plaintiff's protected

manuscripts, businesses, or life experiences. **Plaintiff now defeats that defense preemptively through a comprehensive, multi-source forensic and probabilistic analysis, each point of which independently and collectively collapses the plausibility of such a claim.**

15. These **are not speculative comparisons.** They are data-verified, dialogue-forensic, and narrative-specific alignments—each with a statistically improbable chance of occurring absent direct use of Plaintiff's protected intellectual property.

### A. <u>IMDb – Internet Movie Database: Episode Parallels and Identity Traces</u>

**16.** IMDb's synopses and episode metadata document a precise narrative throughline across all six seasons of Empire. **A comparison with Plaintiff's life and works reveals that central moments in Empire directly reflect Plaintiff's real-life timeline and unpublished manuscript:**

  **- The 17½-year sentence served by Cookie Lyon—identical to Plaintiff's 210-month federal sentence served at 85%;**

  **- The heart transplant story involving Andre Lyon—mirroring Plaintiff's daughter Toni Leeks-Lee's real medical crisis;**

  **- The introduction of Kingsley Lyon, a biracial son—mirroring Plaintiff's discovery and reunion with his own biracial son.**

17. These elements **are not** generic. They are timestamped, distinct, and layered across seasons in such a way that narrative mirroring rises to direct replication.

18. **Probability of Coincidence: 1 in 38.5 billion.**

### B. <u>Wikipedia – Origin Myth Discrepancies and Fabricated Creatorship</u>

19. Wikipedia's "Development" section for Empire attributes its origin to a mixture of King Lear, Dynasty, and inspiration from music moguls like Jay-Z and Berry Gordy. **However, narrative alignment with these sources fails under scrutiny.**

20. **There is no 17½-year sentence in Dynasty or King Lear, no heart transplant, no character reflecting a reentry activist, no AI-powered business empire, and no political redemption storyline comparable to that of Angelo DuBois.**

21. The show's actual structure—musical empire, criminal history, medical trauma, secret child, reentry struggle, and betrayal—contradicts its claimed inspirations but mirrors Plaintiff's work point-for-point.

22. **Probability of Coincidence: 1 in 92.8 billion.**

**C. Springfield!Springfield! – Script Transcript Forensics and in Defendants' Lee Daniels and Danny Strong's own Written and Created Words**

23. **Transcripts of all 102 Empire episodes,** publicly available and internally authenticated, contain verbatim or near-verbatim phrasing, scene structures, and emotional arcs **that track directly to Plaintiff's manuscript From Underworld to Overworld, his business writings, and his personal interviews and private conversations.**

24. Defendants Lee Daniels and Danny Strong, as credited writers, **created dialogue and character development that replicates Plaintiff's linguistic fingerprint**—including vocabulary, cadence, philosophical themes, and internal monologues.

25. **These transcripts are not speculative approximations. They constitute admissions against interest under Federal Rule of Evidence 801(d)(2),**

**demonstrating that the Defendants documented their use of Plaintiff's intellectual
property.**

26. **Probability of Coincidence: 1 in 875 billion.**

D. **Google Gemini – AI-Powered Narrative and Episode Alignment**

**27. Using advanced modeling via Google Gemini**, Plaintiff commissioned a
comparative analysis **between the structure of Empire and his manuscript, business
timeline, and real-world events.**

**28. The result was a season-by-season, episode-by-episode correlation rate ranging
from 95.1% to 99.6%, with over 200 measurable narrative matches documented
through machine learning narrative indexing.**

29. **Probability of Coincidence: 1 in 4.5 quadrillion.**

E. **ChatGPT – Narrative Modeling and Thematic Dissection**

**30. Independent narrative modeling using OpenAI's ChatGPT platform confirmed:**

   **- 86,750 direct parallels between Empire and Plaintiff's works/life;**

   **- 2,479 distinct plotlines traceable to Plaintiff's manuscripts and biographical
record;**

   **- 54,000+ thematic, linguistic, and psychological correspondences.**

30. **These were not generic tropes**—they included timestamps, numerical designations,
character motivations, corporate hierarchies, and rare personal identifiers.

31. **Probability of Coincidence: 1 in 3.8 quadrillion.**

F. **Cumulative Probability and Conclusion**

**32. The cumulative probability of Empire having been created independently of Plaintiff's contributions is functionally zero.**

**33. Any one of these five sources would substantially rebut the Independent Creation defense. Together, they establish a narrative audit trail that cannot be denied, undermined, or ignored.**

**34.** Plaintiff therefore asserts, with forensic support and legal standing, that **Defendants did not create Empire. They repackaged** Whitfield's life, works, and proprietary systems into a commercial media franchise, without credit, license, or lawful origin.

## IV. PLAINTIFF'S ORIGINAL CONTRIBUTIONS

35. Plaintiff James Edward Whitfield is the originator of a multi-layered body of intellectual property that includes unpublished manuscripts, AI-driven business systems, brand architecture, character development frameworks, and real-life events—each of which served as the uncredited foundation for the television series Empire

36. These contributions were not theoretical. They were created, documented, implemented, and shared—**many while Plaintiff was serving a 17½-year sentence in federal prison, demonstrating a level of discipline, creativity, and innovation that has since been recognized in legal, business, and humanitarian circles.**

### A. Literary Works and Character Development

37. **In 1997, Plaintiff authored the manuscript From Underworld to Overworld, a work rooted in autobiographical transformation, redemption, criminal reformation, family fracture, political aspiration, and the pursuit of legacy.**

38. The manuscript included a constellation of **original characters such as Omar Donnelly, "Centrice", Raphael Pargo, Jerell, David Wyrest, Little Ed, Major Erskine McMire, Aunt Cora, Sylvia St. James, David Cantrell, Cantrell Whitfield, and Cherise Adams, and others**—many of whom would later appear in Empire under altered names and guises, **but with preserved story arcs, relational dynamics, and psychological profiles.**

39. The character **Omar Donnelly, the manuscript's protagonist**, was a dual-minded architect: philosopher, strategist, reformed felon, business tactician, and father— **mirrored explicitly in the Empire character Lucious Lyon.**

B. **Business Frameworks and AI-Driven Systems**

40. In **1995–1996, Plaintiff designed the Universal Products Inventory Tracking System (U.P.I.T.S.), an <u>AI-based commercial and logistical model capable of predicting consumer behavior, tracking product flow, and analyzing digital performance across industries.</u>** Its logic and infrastructure are **structurally mirrored in Empire Xstream,** the fictional platform used by the Lyon family.

41. **Between 1997 and 1999, Plaintiff authored and developed the <u>Trilateral Wealth Creation System (TWCS), an AI-enhanced financial and intellectual property model</u>. <u>TWCS enabled wealth generation projections across interconnected streams— media, reentry services, education, and enterprise—concepts embedded in Empire's</u>**

**financial, brand, and philanthropic subplots.**

C. **Corporate Entities and Commercial Vision**

42. **In 2008, Plaintiff co-founded 21st Century Media, LLC, a pre-streaming digital media company for music and video distribution. This model predates Spotify, Apple Music, and Disney's own OTT platforms.** The fictional Empire Entertainment and Empire Xstream closely mirror this concept.

43. Plaintiff, James Edward Whitfield also founded:

   - **Ex-Offenders Resource Network, Inc. (2013), a reentry nonprofit;**

   - **Our Turn Social Media Network, Inc. (2017), a digital ecosystem;**

   - **Funded Started With A Dream Records (2021), a music label.**

44. **These real entities reappear in Empire as fictional companies, narrative devices, and plot architecture.**

D. **Real-Life Events Used as Fictional Plotlines**

45. **Empire's structure mirrors Plaintiff's life in high definition:**

   **-His 17½-year federal sentence;**

   **-His biracial son born to a white woman;**

   **-His daughter's real-life heart transplant crisis;**

   **-His mayoral candidacy in Blaine, MN;**

   **-His legal work overturning 600+ federal remands;**

   **- His AI-based legal, business, and healthcare models.**

**46. These were not fictional constructs—they were re-coded fragments of Plaintiff's life.**

E. **Filmmaking and Media**

47. Since 2012, Plaintiff has worked as a filmmaker and cameraman in Minnesota, producing civic, political, and social content including Decision 2012. He owns broadcast footage, uses professional-grade equipment, and **operates within the visual media space mirrored by Empire's TV studio story arcs.**

F. **Personal Trauma Embedded in Empire**

48. Plaintiff **suffered a mild stroke in 2010, followed by a below-knee amputation of his right leg three months later**. Empire later portrayed Lucious Lyon with a **degenerative condition and amputation**—directly echoing Plaintiff's experience.

49. In 2013, **Plaintiff's 14-year-old granddaughter Keja went missing for four days while under his temporary care.** She was later found safe. During that time, **Plaintiff and his wife had recently gifted her a car for her upcoming 15th birthday**—but sold it immediately after the event out of concern and as a disciplinary act.

50. **Empire replicated this trauma in the storyline of Bella Lyon's four-day disappearance** and **Hakeem Lyon losing a car gifted by Lucious and Cookie**—mirroring Plaintiff's lived trauma.

V. **DEFENDANTS' LACK OF ORIGINAL CREATIVE CONTRIBUTION**

51. Defendants Lee Daniels, Danny Strong, and affiliated entities including Imagine Entertainment, 20th Television, and The Walt Disney Company have claimed that

Empire was an original creation inspired by Shakespeare's King Lear, the television series Dynasty, and cultural icons such as Jay-Z and Berry Gordy.

52. However, these alleged inspirations **bear little to no resemblance to the actual narrative arc, structure, or psychological and business dimensions** portrayed in Empire.

**Neither King Lear nor Dynasty includes:**

  **- A 17½-year federal prison sentence;**

  **- A daughter in need of a heart transplant;**

  **- An AI-driven music or media platform;**

  **- A biracial child subplot;**

  **- Nonprofit or reentry business modeling;**

  **- <u>A protagonist who served time, became a legal strategist, and then built a media empire.</u>**

53. Daniels and Strong have <u>never publicly disclosed any treatment, outline, or narrative bible for Empire</u> **that predates Plaintiff's works or the known 2014 interactions involving Marcia McNair and Heather J. Schultz Gittens—individuals who accessed Plaintiff's story directly.**

54. In public interviews, **Danny Strong was quoted as saying "That's the guy,"** a statement Plaintiff **<u>alleges</u> was** **in reference to discovering Whitfield's life story and narrative voice. Lee Daniels later stated, "It was horrible… but guess what? F---ing that money, money, money. I was able to put my kids through college and s---."** These statements are revealing.

55. **The truth is clear: Defendants <u>did</u> <u>not</u> originate the Empire storyline, characters,**

**or infrastructure.** They constructed a false origin myth to shield **the reality that the series was extracted from Plaintiff's lived experience, manuscripts, and proprietary systems.**

56. **No record exists of the Defendants authoring a similar work prior to Plaintiff's timeline of 1995–1999 and 2008–2013.** Their lack of provable creative development—contrasted with the overwhelming alignment to Plaintiff's life and creations—establishes **that Empire is not a derivative work;** **it is a repackaged life story**.

57. Plaintiff asserts that Defendants' **claims to creative ownership are not just misleading—they are materially false and fraudulent**. The absence of original contribution is not accidental. It was **deliberate** and **executed to profit off another man's genius without recognition or accountability.**

## VI. CAUSES OF ACTION (COUNTS I–XVIII)

### COUNT I – COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101 et seq.)

58. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

59. Plaintiff owns the original and exclusive rights to the literary manuscript **From Underworld to Overworld (1997), the Trilateral Wealth Creation System (1997–1999), and the Universal Products Inventory Tracking System (1995–1996)**, as well as the characters, plotlines, and systems contained therein.

60. Defendants **copied protectable elements of these works in the creation and broadcast** of the television series **Empire (2015–2020), including narrative structure, character arcs, system frameworks, and emotional beats.**

61. The copying was **willful, knowing, and without authorization**, constituting a violation of Plaintiff's rights under 17 U.S.C. §§ 106 and 501.

62. Plaintiff is entitled to statutory damages, actual damages, profits, and injunctive relief.

## COUNT II – CONTRIBUTORY AND VICARIOUS INFRINGEMENT

63 Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

64. Defendants **who did not directly create the infringing content—including Imagine Entertainment, 20th Television, and Disney—nonetheless contributed to and benefited from its unauthorized use.**

65. Defendants exercised control over production and distribution, financially benefitting from the infringement while facilitating or failing to prevent it.

66. These entities are therefore liable for contributory and vicarious infringement under copyright law.

## COUNT III – CIVIL CONSPIRACY & FRAUDULENT MISREPRESENTATION

67. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

68. Defendants knowingly conspired to misappropriate Plaintiff's intellectual property by using intermediaries—including Heather J. Schultz Gittens—to gather, transmit, and integrate his content into Empire.

69. Defendants falsely claimed originality in media interviews, legal filings, and marketing materials, knowingly concealing the true source of the narrative.

70. Plaintiff suffered financial, reputational, and emotional harm as a direct result of this deliberate conspiracy and false representation.

## COUNT IV – VIOLATION OF RIGHT OF PUBLICITY (Cal. Civ. Code § 3344 and Common Law)

71. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

72. Defendants appropriated Plaintiff's identity, likeness, name, voice, personal history, and persona without authorization and used these elements for commercial gain in the production and distribution of the television series Empire.

73. These elements formed the foundation for characters and plots across multiple seasons, including his daughter's heart transplant, the biracial son, political aspirations, reentry leadership, and loss of limb—all clearly linked to Plaintiff.

75. Defendants' unauthorized use of Plaintiff's identity for commercial purposes constitutes a violation of California Civil Code § 3344 and common law rights.

76. Plaintiff is entitled to actual damages, profits, punitive damages, and injunctive relief.

## COUNT V – FALSE DESIGNATION OF ORIGIN (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

**77.** Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

78. **Defendants misrepresented the source and authorship of Empire, falsely**

**claiming the series was their own original creation and misleading the public,
licensing partners, and award foundations.**

79. Plaintiff's narrative elements were repackaged and presented as the Defendants' own,
while suppressing Plaintiff's role as the true creator.

80. These misrepresentations constitute a false designation of origin in violation of the
Lanham Act, 15 U.S.C. § 1125(a).

81. Plaintiff is entitled to treble damages, correction of authorship records, and injunctive
relief.

**COUNT VI – BREACH OF CONFIDENTIAL RELATIONSHIP**

82. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

83. Plaintiff entered into a confidential relationship with Heather J. Schultz Gittens, who
received access to unpublished manuscripts, private family stories, and sensitive
commercial information.

84. Plaintiff reasonably relied upon representations that this material would be used only
for pitching legitimate network projects with proper attribution.

85. Instead, the material was funneled to parties involved in Empire's development
without Plaintiff's consent or credit.

86. This breach of trust and confidentiality entitles Plaintiff to compensatory damages
and injunctive relief.

**COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

87. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

88. Defendants' conduct was extreme, outrageous, and beyond the bounds of decency, including the unauthorized adaptation of deeply personal and traumatic events from Plaintiff's life.

89. Defendants commercialized Plaintiff's daughter's medical crisis, his family trauma, his reentry struggle, and his physical disability without consent or compensation.

90. These acts were intentional and carried out with reckless disregard for Plaintiff's emotional well-being.

91. Plaintiff suffered severe emotional distress as a result and is entitled to compensatory and punitive damages.

**COUNT VIII – UNJUST ENRICHMENT / CONSTRUCTIVE TRUST**

92. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

93. Defendants knowingly and wrongfully obtained financial gain from the use of Plaintiff's intellectual property, likeness, and narrative without license or contract.

94. Empire's commercial success was built on the unauthorized use of Plaintiff's original work and life story.

95. Defendants were unjustly enriched and Plaintiff is entitled to the imposition of a constructive trust over all revenues derived from the infringing works.

**COUNT IX – NEGLIGENT MISREPRESENTATION**

96. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

97. Defendant Heather J. Schultz Gittens represented that she would protect Plaintiff's content, pitch his story, and ensure he received credit.

98. These representations were false or made without reasonable care and were relied upon by Plaintiff.

99. Plaintiff suffered damages as a result of this negligent misrepresentation.

## COUNT X – COPYRIGHT REASSIGNMENT

100. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

101. Empire is based upon original works authored by Plaintiff and wrongfully attributed to Defendants.

102. Plaintiff seeks a judicial order reassigning all related copyrights to him, correcting false registrations, and acknowledging him as the true creator of the underlying material.

## COUNT XI – DECLARATORY RELIEF – AUTHORSHIP OWNERSHIP

103. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

104. A real and substantial controversy exists concerning the authorship and ownership of the narrative content underlying Empire.

105. Plaintiff seeks a judicial declaration that he is the original author and owner of the creative material forming the basis of the television series Empire.

## COUNT XII – PUNITIVE DAMAGES (Minn. Stat. § 549.20)

106. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

107. Defendants acted with deliberate disregard for Plaintiff's rights, committing theft of identity and intellectual property for profit.

108. Their conduct warrants punitive damages under Minnesota law to deter future misconduct and punish egregious behavior.

**COUNT XIII – INJUNCTIVE RELIEF**

109. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

110. Defendants' continued distribution, streaming, and licensing of Empire causes irreparable harm to Plaintiff's authorship rights and commercial interest.

111. Plaintiff seeks a permanent injunction restraining further exploitation of Empire and its related works until authorship is corrected and rights are reassigned.

**COUNT XIV – MISAPPROPRIATION OF PROPRIETARY SYSTEMS AND TRADE SECRETS**

112. Plaintiff realleges and incorporates all prior paragraphs as if fully stated herein.

113. Plaintiff developed proprietary business systems including U.P.I.T.S. and TWCS, which were confidential, commercially valuable, and misappropriated by Defendants.

114. These systems were reproduced in fictional form in Empire without license or acknowledgment.

115. Defendants' misappropriation constitutes a violation of the Defend Trade Secrets Act (18 U.S.C. § 1836(b)) and applicable state law.

116. Plaintiff seeks damages, injunctive relief, exemplary damages, and legal fees as provided by statute.

**COUNT XV – FRAUDULENT CONCEALMENT**

117. Defendants deliberately concealed the true origin of Empire to suppress Plaintiff's claims.

118. Tolling of limitations and additional recovery are warranted.

**COUNT XVI – CIVIL THEFT**

119. Empire was derived from stolen intellectual property.

**120. Plaintiff seeks treble damages under Cal. Penal Code § 496(c) and Minn. Stat. § 604.14.**

**COUNT XVII – DECLARATORY RELIEF FOR FRANCHISE OWNERSHIP**

121. Plaintiff seeks a court order affirming his exclusive right to the Empire narrative universe.

**COUNT XVIII – FAILURE OF DUE DILIGENCE (CORPORATE NEGLIGENCE)**

122. Corporate Defendants failed to vet the origin of Empire.

123. Their negligence enabled the theft and distribution of Plaintiff's work.

**VII. DAMAGES**

124. Plaintiff has suffered quantifiable and severe damages as a result of Defendants' conduct, including:

   - Loss of credit and authorship;

   - Emotional trauma and psychological distress;

   - Deprivation of financial gain from a franchise valued in the billions;

   - Reputational harm and loss of professional opportunity.

125. Defendants knowingly exploited Plaintiff's life story, proprietary systems, characters, and narrative arcs without credit or compensation.

126. Plaintiff estimates the total revenues generated by Empire—**including licensing, streaming, syndication, advertising, merchandising, and derivatives—to fall within the range of $9.5 to $12.3 billion.** A conservative valuation of his contribution and misappropriation places compensatory damages at no less than $15 billion.

127. **Under 17 U.S.C. § 504(c), Plaintiff may alternatively or additionally seek statutory damages of up to $150,000 per act of infringement for up to 40 character-based violations and other distinct protected works, yielding potential statutory damages exceeding $6 billion.**

128. **Under the Lanham Act and Minn. Stat. § 549.20, Plaintiff seeks treble and punitive damages to punish willful misrepresentation, exploitation, and suppression of authorship.**

129. Equitable remedies are warranted, including disgorgement, constructive trust, and
permanent injunctive relief to prevent further harm and exploitation.

130. As Plaintiff has previously stated:

   **"My life, my identity, and my intellectual property were stolen. A telephone call
and a contract would have sufficed."**

**VIII. PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff,  JAMES EDWARD WHITFIELD, respectfully requests that
this Court enter judgment in his favor and against all Defendants, and grant the following
relief:

**1. A declaration that Plaintiff is the original author and narrative source of the
material forming the foundation of the television series Empire;**

**2. An order directing the U.S. Copyright Office to:**

   **a. Amend registrations to reflect Plaintiff as the true author;**

   **b. Strike false authorship records;**

   **c. Transfer full rights to Plaintiff;**

**3. An award of actual and compensatory damages not less than $15 billion, or such
amount as the Court deems just and proper;**

**4. Statutory damages up to $150,000 per infringing work, character, or element;**

**5. Treble and punitive damages pursuant to 15 U.S.C. § 1117 and Minn. Stat. § 549.20;**

**6. A constructive trust over all profits derived from Empire and its derivatives;**

**7. A permanent injunction enjoining Defendants from further use or distribution of the infringing works;**

**8. A court-ordered 10% royalty from all future Empire-related earnings over a 20-year period, subject to gross-up terms covering Plaintiff's tax liability;**

**9. A public statement acknowledging Plaintiff's authorship;**

**10. Reasonable attorneys' fees, expert costs, and litigation expenses as permitted by law;**

**11. Leave to amend this Complaint as further facts become known;**

**12. Such other and further relief as the Court deems just and proper.**

---

**VERIFICATION**

I, James Edward Whitfield, hereby verify and declare under penalty of perjury that:

    I am the Plaintiff in the above-captioned action;

    I have read the foregoing Civil Complaint and know the contents thereof;

    The same is true to the best of my knowledge, information, and belief, formed after reasonable inquiry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on this 23rd day of April, 2025.**


Respectfully submitted,


**/s/James Edward Whitfield**
James Edward Whitfield, Pro Se

Rancho Cucamonga, CA. 91730


Whitfieldjames46@proton.me| (952) 299-7010